UNITED STATES of America,
Plaintiff-Appellee,

v.

Gustavo Adolfo MARTINEZ,
Defendant-Appellant.

No. 84–1135.

United States Court of Appeals,
Tenth Circuit.

June 13, 1985.

Elliot D. Lobel of Segal, Moran & McMahon, Boston, Mass., on brief, for defendant-appellant.

William S. Price, U.S. Atty., and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl., on brief, for plaintiff-appellee.

Before LOGAN, SETH and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Defendant Gustavo Adolfo Martinez entered a conditional guilty plea to one count of possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1), expressly reserving the right under Fed.R. Crim.P. 11(a)(2) to contest on appeal the disposition of his evidentiary motions. On appeal he challenges the district court's refusal to suppress evidence obtained in a search of defendant's luggage pursuant to a search warrant, and seeks to suppress self-incriminating statements given to authorities after the search revealed that he was carrying contraband. We must determine whether the district court properly applied the "totality of the circumstances" analysis articulated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), applicable to probable cause determinations necessary to obtain a warrant.

## I

The parties do not dispute the material facts. On November 16, 1983, the Federal Bureau of Investigation office in Oklahoma City, Oklahoma, received an anonymous telephone call, the information from which formed the initial basis for the search warrant. The caller, who had a Spanish accent, reported that Gustavo Adolfo Martinez, a 23 year-old Venezuelan male, whose birthdate was October 20, was arriving in Oklahoma City at approximately 8:00 p.m. on an Eastern Airline flight from Miami, Florida, having originated his trip in Venezuela. The caller informed the FBI authorities that Martinez would be carrying a kilo of cocaine that would probably be found in his luggage, that the luggage would be brown or blue in color, and that the cocaine would be contained in a yellow bag.

The caller described Martinez as a Venezuelan with olive complexion, over 160 centimeters tall, with black eyes. Martinez' address was given as 1515 N.W. 30th, Apt. 22, Oklahoma City, Oklahoma. The caller stated that Martinez owned four vehicles, including a Toyota, a Pinto, an LTD, and an additional unknown vehicle. The caller also stated that Martinez had earlier returned from Venezuela approximately one to two months ago, bringing with him another kilo of cocaine. Finally, the caller said that the purpose of this message was a concern over Venezuelan countrymen bringing cocaine into the United States and selling it to individuals who could be harmed as a result of its use.

After this call the FBI sought to corroborate the specific details about the suspected drug courier. Its investigation revealed that a Gustavo Martinez in fact had been booked on a November 16, 1983, flight from Caracas, Venezuela, to Miami, Florida, on a foreign airline. The flight booking also contained a reservation for Eastern Airlines flight #1658, leaving Miami for Oklahoma City, with a 12:00 noon departure time and scheduled to arrive in Oklahoma City at 8:35 p.m. The FBI further confirmed that Martinez owned a 1979 Ford LTD sedan with a valid license plate registered in the name of Gustavo or Amaloha Martinez, both of whom lived at 1515 N.W. 30th, but at Apartment 216, not 22, as reported.

After flight #1658 from Miami via Dallas arrived in Oklahoma City, FBI agents observed a man matching the physical description carrying a slender brown carry-on case with a shoulder strap. They saw him pick up a blue, soft vinyl suitcase bearing an identification tag with the name Martinez from the baggage claim area. On the basis of this information, Agent Arbour prepared an affidavit detailing these facts and presented it to a federal magistrate for the purpose of obtaining a search warrant to search Martinez' bags. While other agents detained Martinez, Agent Arbour obtained the search warrant. The subsequent search revealed that Martinez was carrying approximately two pounds of cocaine. Martinez then waived his *Miranda* rights and gave an oral statement concerning his involvement in smuggling cocaine.

## II

On this appeal Martinez maintains that the district court misapplied the *Illinois v. Gates* "totality of circumstances" standard by accepting the conclusions of an anonymous informant without a basis for crediting the anonymous accusations. Martinez contends that the district court misread the *Gates* decision by not according sufficient weight to the honesty or credibility of the informant and the reliability of the way in which the informant acquired his information. We affirm the district court's decision not to suppress the evidence obtained pursuant to the warrant.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court considered what probable cause standard must be met to issue a search warrant based on information obtained from an anonymous informant. In *Gates*, the Court rejected the application of the two-pronged test derived from the Court's decisions in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723

(1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and ruled that a magistrate should consider the totality of the circumstances when determining whether probable cause exists to issue a search warrant.[1] 462 U.S. at 238, 103 S.Ct. at 2332. The Court summarized the probable cause determination in the following way:

> "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Id.*

### III

We begin our analysis recognizing that a magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331 (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969) ). Consequently, our duty as a reviewing court "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) ). Mindful of our position, we hold that the affidavit submitted by Agent Arbour to the magistrate, when viewed in light of the totality of circumstances, was supported by sufficient reliable facts to provide probable cause to issue a search warrant.

We agree with the district court that these facts would not have supported a probable cause finding under the two-pronged *Aguilar-Spinelli* test. The information derived from the anonymous tip in *Gates* also would have failed the old test. 462 U.S. at 227, 103 S.Ct. at 2326. In this case, as in *Gates*, the tip was from an anonymous source that provided nothing from which one might conclude that the caller was either honest or that his information was reliable. Nevertheless, the *Gates* Court held that regarding these two considerations, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. at 2329.

■ Accordingly, notwithstanding the absence of evidence regarding the informant's veracity, there are sufficient facts in the FBI's affidavit to indicate probable criminal activity and therefore we uphold the warrant's validity. The details provided by the caller suggest that the informant was quite familiar with Martinez' smuggling activity. The informant provided information about, among other things, Martinez' age, nationality, physical description, residence, ownership of a Ford LTD, and travel schedule from Venezuela, including his port of entry into the United States at Miami, Florida, a well-known source of illegal drugs. *See Gates*, 462 U.S. at 243, 103 S.Ct. at 2334.

The informant's reliability was demonstrated by the accuracy of such details as Martinez' flight arrival time and description of his luggage. Many of the specific details were independently corroborated by the FBI agents prior to obtaining the search warrant: the flight booking, ownership of the Ford LTD, the residence address, and the physical description of Martinez. As the Court in *Gates* emphasized, the totality of the circumstances analysis necessarily places importance on corroborating the details of an informant's tip by independent police work. *Illinois v. Gates*, 462 U.S. at 241, 103 S.Ct. at 2333. It is all right that these corroborations were only of "innocent" details. *See id.* at 229, 245–46, 103 S.Ct. at 2327, 2335–36.

---

**1.** The Court noted that "anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.'" 462 U.S. at 237–38, 103 S.Ct. at 2332.

Martinez asserts that the warrant issued in this case does not satisfy the *Gates* holding because the informant's statements made no reference to Martinez' future plans but only to facts existing at the time of the tip. Martinez reasons that since the informant did not call the police until his flight had already left Venezuela, anyone could have easily predicted that he would arrive in Oklahoma City at a particular time by observing him buying a ticket and checking his bags and then inquiring into the flight's arrival time. This assertion ignores, however, the fact that Martinez changed airlines in Miami and then boarded a flight that also stopped in Dallas before continuing on to Oklahoma City. The informant's tip therefore required knowledge of the existence and identity of the airline connection, as well as Martinez' ultimate destination of one of two cities. As in *Gates*, this accurate information as to travel plans was of a character likely obtained from Martinez or from someone familiar with his travel plans. *See id.* at 245, 103 S.Ct. at 2335.

Moreover, to the extent that Martinez' plans were readily predictable by one who might have observed him in the Miami airport, the additional detailed information given concerning Martinez' age and his Oklahoma City activities make it extremely improbable that the tip came from a casual observer in Miami. *Gates* requires only a "fair probability" that an informant's information have as its source the actor involved or someone trusted by or familiar with him. *Id.* at 246, 103 S.Ct. at 2336. On balance, the prediction of the flight information and the baggage Martinez would be carrying, when combined with the other information relayed and corroborated, demonstrate that the informant had access to reliable information within the requirement of *Gates*.

Finally, Martinez contends that the warrant lacked probable cause because the FBI was unable to corroborate general items of the informant's report. Martinez concentrates on the caller's allegations that Martinez owned four cars when the federal officers only verified that he owned one, and the assertion that the defendant had made a similar trip to Venezuela in the previous two months, which the FBI never confirmed. Applying the Court's directive to use a reasonable, common sense approach to review of probable cause, *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, we do not view these failures or minor inaccuracies in the informant's report as fatal to the search warrant's validity. *Gates* itself permitted corroboration of the "major" portions of the anonymous tip. *Id.* at 246, 103 S.Ct. at 2336. Moreover, the Court emphasized that "[w]e have never required that informants used by police be infallible.... Probable cause, particularly when police have obtained a warrant, simply does not require ... perfection ...." *Id.* at 245 n. 14, 103 S.Ct. at 2335 n. 14.

The district court properly denied the suppression motions. The judgment is AFFIRMED.