UNITED STATES of America, Plaintiff-Appellee,

v.

James Richard RUTHERFORD, Defendant-Appellant.

No. 86–1922.

United States Court of Appeals, Tenth Circuit.

July 29, 1987.

---

John S. Morgan, Asst. U.S. Atty. (Layn R. Phillips, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Frank A. Zeigler of Martin, Turner & Zeigler, Tulsa, Okl., for defendant-appellant.

Before BALDOCK, McWILLIAMS, and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

James Richard Rutherford, the appellant, and one Nicholas L. Spatafora, who is not an appellant, were jointly charged in the first count of a three-count indictment with conspiring to commit offenses against the United States in violation of 21 U.S.C. § 846. In count two, Rutherford and Spatafora were jointly charged with the possession on November 7, 1985, of three pounds of marijuana with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In count three, Rutherford, but not Spatafora, was charged with the possession on November 7, 1985, of five kilos of hashish, a derivative of marijuana, in violation of 21 U.S.C. § 841(a)(1). Spatafora later pled guilty to count one and was sentenced thereon, and he makes no appeal therefrom. Rutherford in a trial to the court was convicted on all three counts, and he now appeals the sentence imposed thereon.

Prior to trial, Rutherford filed a motion to quash his arrest and a motion to suppress evidence seized in a search of his automobile. After an extended evidentiary

hearing, at which six police officers and both Rutherford and Spatafora testified, the district court made detailed findings and denied Rutherford's motions. In the ensuing trial to the court, the case, by agreement of counsel, was submitted to the district court on the basis of the findings made at the hearing on the pretrial motions. As indicated, the district court found Rutherford guilty on all three counts. A brief review of these stipulated facts will place the controversy in focus.

On November 7, 1985, at about 8:00 a.m., an anonymous informant called the Tulsa, Oklahoma, police department and informed the police that his daughter had been at a party on the preceding evening at Spatafora's residence in Tulsa at which time she had seen a quantity of marijuana in suitcases. Prior to this anonymous telephone call, the Tulsa police department had already developed information that Spatafora was trafficking in drugs out of his residence. As a result of this anonymous tip, Tulsa police, at about 10:00 a.m. on November 7, 1985, set up a surveillance of Spatafora's residence. At about 11:40 a.m. on that same morning Rutherford was observed by the officers when he stopped his car at the Spatafora residence. Rutherford was observed entering the Spatafora residence empty-handed and then seen leaving the residence about ten minutes later carrying a tan bag by its strap, which he placed in the trunk of his car. The officers followed Rutherford as he left the scene in his automobile. At one point, Rutherford pulled his car to the side of the street and an officer pulled in behind Rutherford. The latter, however, sped off as the officer was getting out of his car. After a chase, Rutherford was thereafter stopped by other officers at a ramp leading on to Interstate 44.

At the scene where Rutherford had been stopped, he was questioned briefly by the officers. Rutherford produced a valid Colorado driver's license which bore a Colorado home address. Rutherford stated that the vehicle he was driving belonged to his father, who lived in Grand Lake (presumably, Grand Lake, Oklahoma), and he explained that his father was in the process of buying the car. The vehicle bore Illinois license plates. A radio check indicated the vehicle was not stolen. However, a registration check showed that the Illinois license plate on Rutherford's vehicle had been issued to a Ford automobile, whereas Rutherford was driving an AMC Matador. When asked by the police, Rutherford refused to consent to a search of his vehicle and declined to give a local Tulsa address where he would be staying.

Rutherford was arrested at the scene for driving a vehicle with improper license plates, a violation of a local municipal ordinance, and he, and his automobile, were taken to the police station. At the station Rutherford was booked, bond was set, which Rutherford posted, and he left the station.

At or about the time Rutherford left the station, the police obtained a search warrant and immediately searched Rutherford's vehicle. The search revealed three pounds of marijuana in a tan bag with a strap, and in a separate container five kilos of hashish wrapped in red cellophane, all in the trunk of the vehicle. After leaving the police station upon posting bond on the traffic charge, Rutherford had gone directly to his attorney's office, and he was arrested there on the present charges.

On appeal, Rutherford urges three grounds for reversal: (1) the lawful investigatory detention of Rutherford ripened into a *de facto* arrest without probable cause; (2) the search warrant was not based on "probable cause"; and (3) counts two and three charged only one offense, not two, i.e., there was "one possession" of both the marijuana and hashish, not a separate possession of each.

I.

■ Appellant concedes that under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police did not violate Rutherford's fourth amendment rights when they stopped Rutherford's automobile and made preliminary inquiry of Rutherford. We agree. Certainly, at a minimum, the police had "reasonable suspicion"

that there was marijuana in the bag which Rutherford carried out of Spatafora's residence and then placed in the trunk of his vehicle. However, appellant does argue that what happened thereafter ripened into a *de facto* arrest which was not based on probable cause. We do not agree.

As indicated, at the scene of the stopping, Rutherford exhibited a valid Colorado driver's license. Concerning ownership of the vehicle, Rutherford stated that the vehicle belonged to his father, who, according to Rutherford, was in the "process" of buying the vehicle from an Illinois rental car company. There apparently was some discussion indicating that there was a car rental agreement and temporary registration paper in the glove compartment of the automobile. In any event, the police made a computer check and determined that the car was not a stolen car. However, a registration check showed that the Illinois license plate on Rutherford's AMC Matador had been issued to a Ford automobile. Because of a computer problem, the check took longer than usual, requiring some 25 to 30 minutes. Altogether, the detention at the scene where Rutherford had been stopped lasted about one hour, at which time Rutherford was arrested for having an improper license tag on his vehicle, and Rutherford and his vehicle were taken to the police station.

In *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Supreme Court declined to set any rigid time limitation on *Terry* -type stops, concluding instead that it must consider the law enforcement purposes to be served by the stop and the time reasonably needed to effectuate those purposes. In our case, there was not a prolonged "stop" before an arrest was made for a violation of a municipal ordinance. Certainly, in our

view, the computer problem causing a delay of 25 minutes does not transform this admittedly legal initial detention into an unlawful *de facto* arrest occurring at some point prior to Rutherford's actual arrest for violation of a municipal ordinance. We do not believe that either *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985) or *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985) dictate a contrary holding.[1] In our case, Rutherford, after a relatively short detention, was placed under arrest at the scene of the stop for violation of a local ordinance. True, the police did suspect that Rutherford had marijuana in the trunk of his vehicle, but such does not somehow vitiate the fact that Rutherford was under a lawful arrest for improper vehicular tagging.[2]

As a part of his argument on this point, Rutherford also contends that under applicable municipal ordinances the police had no right to take Rutherford to the police station, but, under the circumstances, could only issue Rutherford a traffic citation and, presumably, place him back on the open road. That is not our understanding of the matter. The local ordinances provide that where an officer is not by ordinance *required* to take a person before a local magistrate, he has *discretion* to either take the person before the magistrate or issue a traffic citation, depending on whether the person furnishes satisfactory identification and whether the officer has reasonable grounds to believe that the person will disregard a written promise to appear in court. Tulsa City Ordinance, Tit. 37, § 133(A). In the instant case, the arresting officer testified that because Rutherford had an out-of-state driver's license bearing an out-of-state address and was driving an automobile bearing an out-of-state license that apparently had been is-

---

1. Both *Gonzales* and *Recalde* were concerned with whether the defendant had given a valid consent to search his car, and in neither case was the defendant arrested at the scene of the stopping for a traffic violation.

2. Defendant contends that the registration papers in the glove compartment showed there was a valid Illinois temporary registration which indicated application had been made in

Illinois to transfer the license tag to the AMC Matador. Whether any of the officers knew of, or saw these papers, is disputed by the parties. However, defense counsel admitted at the hearing that an improper tag violation is a strict liability offense in Tulsa, and a violation occurs regardless of the status of the vehicle or who is driving it.

sued for a different vehicle and because Rutherford was unable to give an exact local Tulsa address where he could be reached, it was decided to take Rutherford to the police station and require bond, rather than issue a traffic citation. We think, under the circumstances, the police acted in accord with applicable municipal ordinances and in so doing violated none of Rutherford's constitutional rights.

## II.

Rutherford's next argument is that the search warrant was not based on probable cause and that the ensuing search of his automobile was unlawful. We do not agree.

The affidavit in support of the application for a search warrant was that of Officer Fultz of the Tulsa police department. Officer Fultz stated therein that for some time prior to November 7, 1985, the Tulsa police department was in receipt of information indicating that Spatafora kept quantities of marijuana in his residence. Then, on November 7, 1985, according to Officer Fultz, an anonymous caller reported that his daughter had been in Spatafora's residence on the preceding evening and had seen three suitcases of marijuana, one suitcase filled with cocaine and several automatic weapons. As indicated, on the same morning the anonymous tip was received, the police set up a surveillance of Spatafora's residence. At around eleven o'clock that morning, Rutherford appeared at Spatafora's residence and entered the premises empty-handed and reappeared ten minutes later carrying a bag which he placed in the trunk. Further, according to the affidavit, when Rutherford drove away from Spatafora's residence the police followed. A short distance away, Rutherford pulled over to the side of the roadway, and when a police car drove up behind the Rutherford vehicle and stopped, Rutherford sped away as the officer was getting out of his car. After a short chase, Rutherford was stopped moments later by the police.

We think the affidavit supported the determination by the state court that there was probable cause to believe that Rutherford was in possession of marijuana. Such determination by an issuing magistrate or judge should be given some deference. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) and *United States v. Martinez*, 764 F.2d 744, 746 (10th Cir.1985). A reviewing court need only ensure that the issuing authority had a substantial basis for concluding that probable cause existed. Certainly in the instant case the totality of the facts and circumstances set forth in the affidavit indicated a fair probability that contraband was located in the trunk of Rutherford's vehicle. See *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332.

## III.

Rutherford's final ground for reversal concerns counts 2 and 3 of the indictment. Counsel claims that instead of setting forth two alleged offenses, in reality, only one offense is alleged. In thus arguing, counsel states that hashish is only a higher grade of marijuana, and that inasmuch as the three pounds of marijuana and the five kilos of hashish were both found in the trunk in the same search, there was only one offense. We disagree with this analysis.

The evidence clearly shows that the three pounds of marijuana found in the suitcase, or bag, came from Spatafora's residence. And the same evidence definitely indicates that the five kilos of hashish did *not* come from Spatafora's residence on the morning of November 7, 1985, i.e., it was *already* in the trunk of Rutherford's vehicle. Hence, Rutherford's possession of the marijuana was separate and apart from his prior acquisition, but continued possession, of the five kilos of hashish. Each transaction forms the basis for a separate prosecution. Accordingly, we need not get involved in a discussion over the chemistry of marijuana vis-a-vis hashish.

Judgment affirmed.