**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Robert Douglas COOK, Defendant–Appellee.**

No. 88–1124.

United States Court of Appeals, Tenth Circuit.

Aug. 16, 1988.

---

Kathryn Meyer, Asst. U.S. Atty. (and Michael J. Norton, U.S. Atty., with her on the brief), Denver, Colo., for plaintiff-appellant.

Scott H. Robinson, of Gerash, Robinson & Miranda, P.C., Denver, Colo., for defendant-appellee.

Before McKAY and BRORBY, Circuit Judges, and PARKER,* District Judge.

BRORBY, Circuit Judge.

This case comes before the court on an interlocutory appeal pursuant to 18 U.S.C. § 3731 and Fed.R.App.P. 4(b). The United States District Court for the District of Colorado suppressed a quantity of cocaine, physical evidence of a violation of 21 U.S.C. § 841(a)(1). The Government appeals.

The Government presents two issues: (1) did the district court err in finding that the affidavit in support of the search warrant failed to establish probable cause; and (2) did the district court err in refusing to apply the "good faith exception" to the exclusionary rule as set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, *reh. denied* 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984). Assuming but not holding that the affidavit fails to establish probable cause, we believe the district court erred in refusing to apply the good faith exception to the exclusionary rule as set forth in *Leon.*

The facts of the case are undisputed. On November 27, 1987, a detective with the Denver Police Department applied for and obtained a search warrant to search the defendant's apartment. At the time of the application, he had been a law enforcement officer for fourteen years and had served at least eleven of those years in the Narcotics Bureau of the Denver Police Department. He personally prepared the affidavit in support of the warrant, and delivered it to a deputy district attorney in Denver, who read and approved the documents. The detective then presented the affidavit to a state court judge who issued the warrant commanding the named detective or any other officer authorized to search for and seize evidence as detailed in the warrant. The execution thereof netted bulk cocaine, sealed packaged cocaine, bulk marijuana, narcotic paraphernalia and packaging equipment, a police scanner, and other items. Subsequently the defendant was indicted by a federal grand jury for possession with the intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The defendant filed a Motion to Suppress, the district court granted the motion, and the Government now appeals.

## Good Faith Exception

In *Leon,* the Supreme Court modified the Fourth Amendment exclusionary rule to provide that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and in reasonable reliance on the warrant. *United States v. Leary,* 846 F.2d 592, 607 (10th Cir.1988); *United States v. Medlin,* 798 F.2d 407, 409 (10th Cir.1986). The *Leon* Court applied the "good faith" exception to admit the evidence from a search warrant subsequently invalidated by a lack of probable cause.

In determining whether we should apply the exception, the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922, n. 23, 104 S.Ct. 3420 n. 23. To answer this "objectively ascertainable question," we are to consider "all of the circumstances," *id.,* and assume that the executing "officers ... have a reasonable knowledge of what the law prohibits." *Id.* at 919–20, 104 S.Ct. at 3419, n. 20; *Leary,* 846 F.2d at 607.

---

* The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

Furthermore, "[t]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir.1986); *Leary*, 846 F.2d at 607, n. 26.

■ The record in this case reveals that at the suppression hearing the Government introduced into evidence the affidavit, search warrant, and return and inventory. At that hearing the detective who drafted and swore to the contents of the affidavit testified: (1) he was a police officer for the City and County of Denver, had been a police officer for approximately fourteen and one-half years, and had been assigned to his current work in the narcotics bureau for approximately eleven and one-half to twelve years; (2) he prepared the affidavit; (3) he took the affidavit to a deputy district attorney in Denver who read and approved it; (4) he then took the documents to a county court judge, who asked him no questions and issued the search warrant; (5) he had never met the judge before and had no idea how long he had been a judge; (6) the detective had prepared at least thirty or forty affidavits for search warrants previously, although the record fails to indicate how many of those affidavits were refused, approved or later upheld by reviewing courts.

The Government's elicitation of facts at the suppression hearing was anemic at best. Even so, combined with the facts stated in the affidavit, we believe that the record demonstrates that a reasonably well-trained law enforcement officer would not have known that the search was illegal [assuming it was] despite the magistrate's authorization, as contemplated in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. The detective's reliance on the legality of the warrant was objectively reasonable.

In reaching our conclusion, we first note that the affidavit is not devoid of facts. *See United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir.1985); *Medlin*, 798 F.2d at 409. The sources of facts in the affidavit include a first-time confidential informant (C.I.), two detectives, a police officer, and Denver Police Department records. According to the affidavit, within twenty-four hours of drafting the affidavit the C.I. told the affiant that within the last three days he was at 9888 E. Vassar Drive, Building J, Apartment No. 208 in the City and County of Denver, he observed a male person known to him as "R.C. Cook" in the possession of several "paper decks" of cocaine and large sums of United States currency. The C.I. told the affiant that he had seen cocaine in Cook's possession at that location on several other occasions, and that Cook told the C.I. he was selling the cocaine. The C.I. also stated to the affiant that he was familiar with the appearance and packaging of cocaine because he had purchased and used cocaine in the past.

The affidavit also indicated that the day before the affiant applied for the warrant, a named police officer, who had been working at the apartment complex, observed a lot of foot traffic in and around Building J, Apartment No. 208. The affiant recites in the affidavit his training and experience (as testified to at the suppression hearing), and states that the described activity is consistent with drug trafficking. On investigation, he learned that a party known as Robert Douglas Cook occupied the apartment. Denver Police Department records revealed that Cook was on probation currently for possession of a controlled substance. The affiant possessed a copy of the judgment of conviction revealing Cook's six year probation. The officer described the address, location, and identifying characteristics of the building where Cook lived.

The second named detective furnished the affiant with the facts that on the date of application for the warrant the buildings were as the above-named officer described and Cook was still listed next to Apartment No. 208 on the inside of building J. Affiant then recites that a records check of Robert D. Cook revealed that he had been arrested in Denver on at least two occasions for illegal possession of a controlled substance, including arrest in possession of cocaine and a .22 caliber handgun in 1985 and another arrest in 1985 in possession of

**374**

26.5 grams of cocaine and a .22 caliber handgun.

Although there is a continuing debate about the sufficiency of the affidavit to establish probable cause, we do not believe that the affidavit is so lacking in facts that a reasonably well trained officer would have known that the search was illegal despite the judicial authorization. *Leon,* 468 U.S. at 922, n. 23, 104 S.Ct. at 3420 n. 23. *Leary,* 846 F.2d at 607. The officer sought review and approval of the affidavit by a prosecutor before seeking and receiving issuance of the warrant by a judge. The issuing judge found that the facts established probable cause to issue the search warrant. The record reveals that in suppressing the evidence, the reviewing judge viewed the affidavit deficient for the reasons that the affidavit: contained no definition of a "deck" of cocaine; failed to describe a recognizable quantity of cocaine; failed to establish the reliability of the confidential informant; failed to demonstrate corroboration of the information from the confidential informant; and contraindicated suspicion by stating the suspect was on probation for a drug offense. Even with time to reflect, judges now cannot agree on the sufficiency of the affidavit to establish probable cause. As in *Medlin,* "[i]n such a case the good faith principles established in *Leon* ... come into play directly." *Id.,* 789 F.2d at 409.

We hold under *Leon,* that the detective's reliance on the judge's probable cause determination and on the technical sufficiency of the warrant was objectively reasonable. The Court stated in *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422:

> [The] application for a warrant clearly was supported by much more than a "bare bones" affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable.

Our conclusion herein follows the rationale of *Leon.*

■ We also believe the application of the extreme sanction of exclusion is inappropriate in this case. As the Court made clear in *Leon,* the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417. As the Court stated:

> In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination.... "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." ... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. *Id.,* 468 U.S. at 921, 104 S.Ct. at 3419.

The record establishes that the detective's reliance on the judge's determination of probable cause was objectively reasonable. We REVERSE.