**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**Robert Kelly BISHOP,
Defendant/Appellant.**

No. 88-2757.

United States Court of Appeals,
Tenth Circuit.

Nov. 20, 1989.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant/appellant.

Leslie M. Kaestner, Asst. U.S. Atty. (William S. Price, U.S. Atty., Oklahoma City, Okl., and H. Lee Schmidt, Asst. U.S. Atty., were on the brief), for plaintiff/appellee.

Before BALDOCK, McWILLIAMS and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Defendant was convicted after a jury trial in the United States District Court for the Western District of Oklahoma of two counts of bank robbery under 18 U.S.C. § 2113(a). On appeal, defendant argues that the district court improperly denied his motions to suppress evidence obtained as a result of an allegedly deficient warrant, to grant a new trial because of the prosecution's tardy disclosure of impeachment evidence, and to acquit for insufficient evidence. We affirm the district court's orders denying each of these motions.

## BACKGROUND

On June 1, 1988, the Mercantile Bank of Moore, Oklahoma, was robbed by a man who used a note claiming he possessed a gun. Kim Jolly, the teller from whom the money was taken, described the perpetrator as a white male, wearing a maroon sweater, approximately twenty-five years of age, weighing one hundred forty pounds, with brownish-blond collar length hair and a razor-stubble beard growth.

On June 6, 1988, F.B.I. agents investigating the robbery were notified by an Oklahoma City police detective of an anonymous phone call concerning the robbery. According to the officer, the informant had told him that the "white male" who had robbed the bank in Moore was residing with a woman named Karen. Although the informant did not know Karen's last name, he told the officer Karen's phone number and place of employment. The informant did not state the basis of his knowledge.

The F.B.I. agents confirmed the information supplied by the informant. The agents traced the phone number to apartment C1, 7910 Northwest Twenty-First Street, Oklahoma City. The apartment manager confirmed that this was the address of a Karen Barber who worked at the restaurant indicated by the informant.

On June 6, 1988, two service repairmen who had entered apartment C1 to repair the plumbing told the F.B.I. agents that a white male with beard stubble and collar-length, brownish-blond hair weighing about one hundred forty pounds was staying in the apartment where Karen Barber resided. The next day, a resident of another apartment in the building confirmed that a man matching the description given by the repairmen had been staying in Karen Barber's apartment.

On June 8, 1988, on the basis of those facts, the agent in charge sought and obtained a warrant authorizing a search of Karen Barber's apartment and automobile. Also on that day, but before the agents executed the search warrant, the Capitol Federal Savings Bank of Yukon, Oklahoma, was robbed by a man matching the description of the Mercantile Bank robber.

On the afternoon of June 8, 1988, the F.B.I. agents entered Karen Barber's apartment while defendant was there. The agents searched the apartment and the automobile as authorized by the warrant. In the bathroom, the agents discovered a "wad" of money closely corresponding in denominations and amount to the money taken during the second robbery. The agents also found a black shirt matching the description of the one worn by the robber of the Capitol Federal Bank. Defendant was arrested and taken into custody.

On June 21, 1988, defendant was charged with both of the robberies in a two-count indictment under 18 U.S.C. § 2113(a). On the basis of eyewitness identifications and other evidence, defendant was convicted by a jury of both counts of robbery. Defendant was sentenced to serve two concurrent twenty-year sentences. Defendant now appeals the district court's rulings denying his motions to suppress evidence, to declare a mistrial, and to acquit for insufficient evidence.

### 1. Motion to Suppress Evidence Obtained by the Search Warrant

#### A. Probable Cause for the Warrant.

Defendant contends that there was not probable cause to issue the warrant to search Karen Barber's apartment and automobile because none of the facts supplied by the anonymous informant (other than the conclusory statement that the "white male" staying with Karen was the robber) were addressed to defendant's culpability nor was any basis provided to establish the reliability of the informant's conclusion that defendant was the person who had robbed the Mercantile Bank. Defendant argues that the F.B.I. agents' independent corroboration of many of the facts that were supplied by the informant did not bolster the probability of discovering incriminating evidence through the search authorized by the warrant because they were not facts disclosing special knowledge on the part of the informant relating to the crime, and because this informant had not previously proven himself reliable.

■ We begin our analysis of defendant's claims "recognizing that a magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *United States v. Martinez,* 764 F.2d 744, 746 (10th Cir.1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). On appeal, this court need only satisfy it-

self "that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332). The determination of whether there was a substantial basis for concluding probable cause existed must be based on the "totality-of-the-circumstances." *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

The Supreme Court determined the type of information that an anonymous informant must supply in order to form the basis for probable cause in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates,* an anonymous letter was sent to the Bloomingdale, Illinois, Police Department describing the manner in which a Mr. and Mrs. Gates purchased illegal drugs in Florida and transported them back to Illinois. *Id.* at 225, 103 S.Ct. at 2325. The anonymous letter predicted that the Gates couple would engage in further smuggling. *Id.* As the letter predicted, Mr. Gates flew to Florida and drove home the next day with his wife who had driven to Miami ahead of him. *Id.* at 226, 103 S.Ct. at 2325. A warrant was obtained to search the Gates household, and large quantities of drugs were discovered. *Id.* at 226–27, 103 S.Ct. at 2325–26.

The Supreme Court agreed with the Illinois Supreme Court that, because the anonymous letter provided no indication of the author's reliability or the basis for his speculation, standing alone the letter was an insufficient basis for establishing probable cause. *Id.* at 227, 103 S.Ct. at 2326. However, the Court went on to find that other considerations sufficiently augmented the credibility of the letter to validate the search warrant. First, the Court pointed to Mr. Gates' brief stay in Florida, a known source of illegal drugs. *Id.* at 243, 103 S.Ct. at 2334. Second, the Court held that the anonymous informant's accurate prediction of the Gateses' method of operation sufficiently established the veracity and reliability of the informant. *Id.* at 244, 103 S.Ct. at 2335. Finally, the Court held that

the anonymous informant's disclosure of the Gateses' future actions established a basis upon which a magistrate "could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities." *Id.* at 245, 103 S.Ct. at 2336.

The amount of corroborating evidence presented to the magistrate in *Gates* in conjunction with the anonymous tip there was greater than that presented in this case because the informant here did not predict any future activity of defendant. Moreover, unlike the anonymous letter at issue in *Gates,* the substance of the anonymous tip in this case demonstrated no special knowledge of the crime. Finally, the informant in this case, as in *Gates,* had not previously proven himself reliable. *See Gates,* 462 U.S. at 242 n. 12, 103 S.Ct. at 2334 n. 12 (discussing the significance of an informant's proven reliability in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)).

An examination of the Tenth Circuit's application of *Gates* makes clear that when this court upheld search warrants in the past, it has typically been presented with a greater showing of probable cause than that which satisfied the district court below. In *United States v. Rutherford,* 824 F.2d 831 (10th Cir.1987), this court held that there was probable cause for a warrant to search the car of a defendant based upon allegations that he had visited a house that was under surveillance for narcotics sales, emerged with a bag, and then sped away when approached by a police car. *Id.* at 835. In *Rutherford,* the basis of the surveillance of the house was an anonymous tip by an informant who claimed his daughter had visited the house and viewed large quantities of illegal drugs. *Id.*[1] This court held that the anonymous tip (which demonstrated sufficient factual knowledge of the contents of the house), combined with the defendant's actions after leaving the house, added up to probable cause validating the warrant to

---

1. The affidavit in support of the search warrant also stated that prior to the anonymous tip the police officers had received information that the house contained quantities of narcotics. *Id.*

search the defendant's automobile for drugs. *Id.*

Similarly, in *United States v. Martinez*, 764 F.2d 744 (10th Cir.1985), this court affirmed the validity of a search warrant where an anonymous phone caller demonstrated great familiarity with the defendant's drug smuggling activity. In *Martinez*, the informant predicted precisely when Martinez would be arriving in Oklahoma City with a kilo of cocaine concealed in a brown or blue suitcase on a flight from Miami, Florida, having begun his travel in Venezuela. *Id.* at 745. The informant thus knew the details of defendant's travel plans from Venezuela to Oklahoma City through Miami, as well as his age, physical description, residence, automobile make and luggage type. *Id.* at 746. These "innocent facts" and the predicted travel were corroborated by the agents' investigation and surveillance. *Id.* Those facts, together with the corroboration by the agents, formed the basis of the search warrant. *Id.* As in *Gates* and *Draper*, the anonymous informant demonstrated prophetic accuracy in predicting the defendant's actions.

■ In this case, there were no predictions concerning the defendant's future activity. The anonymous informant did not disclose the basis for his belief that defendant had robbed the bank. The informant had not established a track record of supplying accurate information. None of the information disclosed by the informant, and confirmed by the agents, was of the type unavailable to one without special knowledge of the criminal activity. If the information supplied by the anonymous informant were the only basis for the warrant, then it would lack probable cause.

The descriptions of the defendant given by the repairmen and by Karen Barber's neighbor which corresponded to that of the Mercantile Bank robber given by the bank tellers (which were contained in the sworn affidavit), make the probable cause determination a much closer question. That corroboration distinguishes this affidavit from the wholly conclusory "bare bones" affidavits condemned in *Gates*, 462 U.S. at 239, 103 S.Ct. at 2333.

However, resolution of whether there was probable cause supporting the warrant is not necessary to our decision affirming the district court's denial of defendant's suppression motion because, as discussed below, the agents' conduct clearly falls within the "good faith exception" to the exclusionary rule. *See United States v. Cook*, 854 F.2d 371, 372 (10th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989) (reversing the granting of a motion to suppress under the good faith exception to the exclusionary rule by assuming, without expressly holding, that the warrant there lacked a probable cause basis). Therefore, we do not decide whether the facts in the affidavit established probable cause for the warrant.

### B. Good Faith Exception to the Exclusionary Rule.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court decided that the policies of deterring police misconduct that supported the exclusionary rule required that there be an exception allowing admission of evidence obtained pursuant to an invalid search warrant where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920, 104 S.Ct. at 3419. Thus, this court's "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23, 104 S.Ct. at 3420 n. 23. This determination is to be made taking into account "all of the circumstances," *id.*, and assuming that the executing agents "have a reasonable knowledge of what the law prohibits." *Id.* at 920 n. 20, 104 S.Ct. at 3419 n. 20.

■ We agree with the district court's alternative ruling that the F.B.I. agents in this case acted in good faith. The agents exercised diligence in confirming as much of the information supplied by the anonymous informant as possible. In addition,

the agents conducted several interviews to confirm that a man matching the description of the robber of the Mercantile Bank was staying in Karen Barber's apartment. The agents presented that evidence to the magistrate and obtained a warrant not "devoid of factual support." *See United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985). A warrant based upon the information supplied here to the magistrate would not have been recognized by a reasonably well-trained officer as illegal.

The affidavit contained enough facts that an officer could have reasonably concluded that there was probable cause to believe that evidence of the Mercantile Bank robbery would be discovered in Karen Barber's apartment and automobile. That is especially clear, "remember[ing] that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *Id.*

However, under *Leon,* our inquiry does not end with a determination that the agents relied on the warrant in objective good faith. The *Leon* Court went on to articulate four situations in which the good faith exception to the exclusionary rule would not apply.

First, evidence must still be suppressed "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421. Second, the exception does not apply "where the issuing magistrate wholly abandoned his judicial role." *Id.* Third, the exception does not apply where it would be impossible for an officer to manifest "objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)). "Finally, ... a warrant may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.*

Defendant does not assert that the agents knew of, or recklessly disregarded, any falsity in the information supplied to the magistrate, nor indeed was it alleged that any of the supplied information was false. Defendant neither contends that the magistrate acted improperly, nor that the warrant failed to identify the place to be searched with sufficient particularity.

However, defendant does argue that the agents' reliance on the warrant is not within *Leon*'s good faith exception because the affidavit underlying the warrant lacks any information crediting the informant's veracity or reliability. Although this infirmity is not without significance to our probable cause inquiry, it does not convert this into "a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).

That reliance on an informant of unproven reliability does not preclude a finding of the agents' good faith is demonstrated by the facts of *Leon* itself. In *Leon,* an informant told the police that he had witnessed the defendants sell illegal narcotics from their residence. *Id.* 468 U.S. at 901, 104 S.Ct. at 3409. The officers conducted an extensive investigation, witnessing persons with known drug involvement leave defendants' residence with small packages. *Id.* at 901–02, 104 S.Ct. at 3409. The Supreme Court held that the officers could reasonably have believed the facts supporting the warrant established probable cause to suspect the defendants' residence contained evidence of illegal activity. *Id.* at 926, 104 S.Ct. at 3422.

Admittedly, the subsequent surveillance by the officers in *Leon* revealed ongoing suspicious activity where no such continuing behavior was observed here. But the very nature of the crime charged against this defendant would not necessarily cause an agent here to expect to see continuing suspicious activity. In any event, like the

officers in *Leon,* the agents here presented the magistrate with as much factual corroboration of the informant's statements as a thorough investigation allowed. The agents confirmed that a woman named Karen resided in the apartment matching the phone number offered by the informant. By interviewing two repairmen and a resident of a nearby apartment, the agents also corroborated the informant's statements that a white male matching the description of the Mercantile Bank robber was staying in Karen's apartment. On the basis of that information, the magistrate determined there was probable cause sufficient to issue the warrant. As *Leon* makes clear, "[i]n the ordinary case, an officer can not be expected to question the magistrate's probable cause determination." *Id.* at 921, 104 S.Ct. at 3419. Therefore, we hold that the agents' reliance on the warrant was objectively reasonable and that "the extreme sanction of exclusion is inappropriate in this case. As the Court made clear in *Leon,* the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Cook,* 854 F.2d 371, 374 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

### 2. *The Prosecution's Delinquent Disclosure of Brady Material*

■ Defendant also argues that the district court improperly denied his motion for a new trial based upon alleged prejudice caused by the government's failure to disclose requested impeachment evidence until trial had begun. The information at issue is the prosecution's knowledge that the robbed teller from the Mercantile Bank had identified a person other than the defendant in a photographic line-up conducted shortly after the defendant was arrested. The prosecution concedes that it was obligated to disclose the teller's identification under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court ruled that no *Brady* violation occurred because the defense learned of, and utilized, the teller's earlier identification in the presentation of its case-in-chief.

We review the district court's ruling *de novo. See United States v. Kennedy,* 869 F.2d 1336, 1338 (9th Cir.1989).

*Brady* requires that the prosecution turn over material evidence favorable to a defendant when she or he requests it. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. However, the Supreme Court clarified the reach of *Brady* in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), where it stated that the rule applies only to those situations where the defendant discovers "after trial, ... information which had been known to the prosecution but unknown to the defense." *Id.* at 103, 96 S.Ct. at 2397.

Although the Supreme Court has not squarely confronted the issue, this court has previously concluded "that *Brady* is not violated when the Brady material is available to defendants during trial." *United States v. Behrens,* 689 F.2d 154, 158 (10th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). *See United States v. George,* 778 F.2d 556, 561 (10th Cir.1985); *United States v. Alberico,* 604 F.2d 1315, 1319 (10th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979).

The reasoning behind that approach to disclosure of *Brady* information is based on the Supreme Court's reasoning in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In *Agurs,* the Court announced that the standard for evaluating the materiality of a Brady violation is whether presentation of the evidence would have given rise to "a reasonable doubt [of guilt] that did not otherwise exist" if it had been available at trial. *Id.* at 112, 96 S.Ct. at 2402. This court has stated that the implication of this language is that where, as here, the evidence was actually presented at trial, application of an *Agurs* standard would be "nonsensical" because the evidence was actually available for use at trial. *Alberico,* 604 F.2d at 1319.

■ In the present case, the identification by the bank teller was disclosed to the defense during the trial. The defense called the investigating agent as its final witness and elicited the information about

the teller's identification of one other than the defendant as the robber. The defense made a tactical decision not to recall the teller, evidently feeling that to do so would bolster the significance of her testimony. The jury was fully aware of the teller's failure to identify the defendant in the photo line-up. Defendant's claim that cross-examining the teller was somehow made tactically impossible by the delayed disclosure does not rise to the level of a *Brady* violation. *See United States v. Warhop*, 732 F.2d 775, 777 (10th Cir.1984) (no due process violation where defendant made a tactical decision not to utilize *Brady* evidence disclosed mid-trial).

Moreover, to the extent that a materiality inquiry under *Agurs* is feasible in a situation where defendant was in receipt of *Brady* materials during trial, we do not believe that earlier disclosure of the information would have given rise to a reasonable doubt that did not otherwise exist. Therefore, we affirm the district court's denial of defendant's motion for a new trial.

### 3. *Defendant's Motion For Acquittal*

■ Defendant's final argument is that the district court improperly denied his motion to acquit for insufficient evidence. Our review of a denial of a motion to acquit for insufficient evidence is limited to determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In addition, this court "must consider, in a light most favorable to the Government, all direct and circumstantial evidence and the inferences that may reasonably be drawn from that evidence." *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987).

■ In this case, the government must prove beyond a reasonable doubt that the defendant took property in the possession of an F.D.I.C. insured bank by intimidation. *See* 18 U.S.C. § 2113(a), (f). Considering the evidence in a light most favorable to the government, the jury could have fairly found the following facts beyond a reason-able doubt based on the evidence presented at trial.

Defendant was identified at trial as the man who robbed the Mercantile Bank on June 1, 1988, by both the teller from whom money was taken, as well as an observing teller. A resident of an apartment near the Mercantile Bank also identified defendant as the person she saw fleeing the Mercantile Bank on the morning of June 1, 1988.

Defendant sold a tan colored Pontiac T-1000 on either June 3, or June 4, 1988. A photograph of that automobile was identified as similar to the car used in the robbery of the Mercantile Bank by the same witness who identified the defendant as the man she saw fleeing the Mercantile Bank.

A teller at the Capitol Savings Bank testified that her station was robbed on the morning of June 8, 1988, by a man with a note claiming to have a gun. She identified the defendant in court as the perpetrator.

Two F.B.I. agents testified that, when they went to search the apartment where defendant was staying on the afternoon of June 8, 1988, they asked defendant if he knew the whereabouts of Karen Barber, the resident of the apartment. Before being informed of the purpose of their inquiry, defendant responded that Karen was "not involved."

The agents also testified that after they had begun their search of the apartment and informed defendant that he was a suspect in the bank robberies, he indicated that the "money's in the bathroom", even though none of the agents had disclosed they were searching for money. The amount and denominations of the currency discovered in the bathroom was close to that taken from the Capitol Savings Bank on the morning of the search. A black shirt was discovered in the apartment. The teller from the Capitol Savings Bank testified that the shirt looked like the shirt worn by the man who robbed her window at the Capitol Savings Bank on June 8, 1988.

The vice-presidents of both the Mercantile and Capitol Savings Banks testified to the amounts taken from their respective institutions. They also testified that both banks were F.D.I.C.-insured.

On the basis of the above evidence, and the inferences which can be fairly drawn, we have no difficulty concluding that a review of the evidence in a light most favorable to the government confirms that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Therefore, the district court's denial of defendant's motion to acquit is affirmed.

## CONCLUSION

We affirm the denial of defendant's motion to suppress without deciding whether there was probable cause to issue the warrant in this case. The district court correctly ruled that the agents relied on the warrant in good faith. We further hold that the prosecution's late delivery of *Brady* material did not violate defendant's due process rights because the information was received in time for defendant to use the information adequately at trial. We affirm the district court's denial of defendant's motion for acquittal.

As a final matter, we remand for resentencing. Although the crimes for which the defendant was convicted occurred after the Federal Sentencing Guidelines took effect, the sentencing judge did not use the guidelines, having earlier ruled in an unrelated case that they were unconstitutional. In the interim period between defendant's sentencing and this appeal the Supreme Court affirmed the constitutionality of the Sentencing Guidelines in *United States v. Mistretta,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Therefore, because the district court judge did not impose an alternative sentence pursuant to the Sentencing Guidelines to be imposed, we agree with the defendant and the government that the case should be remanded for resentencing pursuant to the Sentencing Guidelines.

The decision of the district court is AFFIRMED and this case is REMANDED for resentencing.