**UNITED STATES of America, Plaintiff,**

v.

**Gregory STOREY, Defendant.**

**Criminal Action No. 96–40018–01–DES.**

United States District Court,
D. Kansas.

Feb. 24, 1997.

Charles M. Rogers, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, Thomas J. Bath, Jr., Bath Law Offices, P.A., Overland Park, KS, for Gregory Storey.

Thomas G. Luedke, Robin D. Fowler, Office of U.S. Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

On March 14, 1996, a grand jury returned a three-count indictment against Gregory Storey. Count 1 charged that the defendant, with premeditation and malice aforethought, did unlawfully kill Charles Leger, in violation of 18 U.S.C. § 1111. Count 2 charged that the defendant, while unlawfully and knowingly in possession of a dangerous weapon within the confines of a federal facility, did intentionally and unlawfully kill Charles Leger, in violation of 18 U.S.C. § 930(c). Count 3 charged that the defendant, while an inmate at the United States Penitentiary in Leavenworth, Kansas, did knowingly and unlawfully possess a prohibited object, to wit: a sharpened instrument made of metal, approximately ten inches in length, intended to be used as a weapon, in violation of 18 U.S.C. § 1791(a)(2), (d)(1)(B), and (b)(3).

On October 17, 1996, the United States Attorney General authorized the United States Attorney for the District of Kansas to seek the death penalty.

On January 8, 1997, the grand jury returned a three-count superseding indictment against Mr. Storey. The language in Count 1 was changed from "did unlawfully kill Charles Leger" to "did unlawfully, willfully and deliberately, murder Charles Leger." Count 2 of the superseding indictment contains the charge previously contained in Count 3. Count 3 is new. It charges that beginning on or about the 1st day of July, 1995, and continuing until on or about the 25th day of August, 1995, the defendant knowingly, willfully, and unlawfully combined, conspired, confederated and agreed, with Michael McElhinney, David Sahakian, Steven Ritter, Troy Tancredi, Michael Eyeselle, George Pratt, and others, to willfully, deliberately, with malice aforethought and premeditation, murder Charles Leger. Count 2 of the original indictment has been deleted.

The court heard arguments on a number of the defendant's pretrial motions on January 22, 1997. The court has reviewed the parties' briefs and arguments and is now ready to rule.

### A. Gregory Storey's Motion Concerning Voir Dire Procedures (Doc. 102)

The defendant has proposed a procedure for jury selection in this case which would include the use of a jury questionnaire and attorney-conducted voir dire. The defendant also seeks the opportunity to conduct individual sequestered voir dire in the court's jury deliberation room. The government has no objection to the general procedure outlined by the defendant, but argues that individual voir dire should be open to the public and conducted in the courtroom.

The United States Supreme Court has held that the guarantee of open public proceedings in criminal trials extends to the voir dire examination of potential jurors. *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984). "The presumption of openness [in jury selection] may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values

and is narrowly tailored to serve that interest." *Id.* at 510, 104 S.Ct. at 824. In *Press–Enterprise,* the California Superior Court opened general voir dire in a capital murder case to the public, but conducted sequestered individual voir dire. *Id.* at 503, 104 S.Ct. at 821. The Supreme Court held that the state court's closure of voir dire was unconstitutional, in that the trial judge had failed to consider alternatives. *Id.* at 511, 104 S.Ct. at 824–25; *see also In Re Memphis Publishing Co.,* 887 F.2d 646, 648 (6th Cir.1989) (error to close voir dire to public).

■ Here, the defendant seeks to conduct sequestered individual voir dire in order to "put prospective jurors at their ease, and encourage more open responses." The court finds that the defendant's interest in closing voir dire is insufficient to overcome the presumption of openness. Querying jurors individually, outside the presence of the rest of the venire, should ensure that the jurors are forthcoming in their answers.

With the exception of his request for sequestered voir dire, the court generally adopts the defendant's recommendations for jury selection as set out in his motion. Defense counsel shall provide government counsel with a proposed jury questionnaire by **March 24, 1997.** The government shall provide defense counsel with suggested changes to the questionnaire by **March 31, 1997.** The parties shall meet with the court, if necessary, at **9:00 a.m., April 3, 1997,** to resolve any differences regarding the questionnaire. The questionnaire shall be administered to prospective jurors at **1:00 p.m., April 14, 1997,** at White Concert Hall on the Washburn University campus, Topeka, Kansas. The completed questionnaires shall be distributed to counsel **April 21, 1997.** The court shall conduct a hearing on challenges for cause and requests to be excused based on questionnaire responses **May 5, 1997.** General voir dire shall commence **May 19, 1997,** with individual voir dire commencing upon the completion of general voir dire. The parties shall be allowed to question jurors during both general and individual voir dire. The individual voir dire shall be conducted in courtroom 403.

Due to an anticipated trial length of six weeks, the court shall impanel four alternate jurors. Fed.R.Crim.P. 24(b) provides that when an offense charged is punishable by death, each side is entitled to twenty peremptory challenges. Each side will be entitled to an additional two peremptory challenges against the alternate jurors. A total of sixty qualified venirepersons will therefore be required. Individual voir dire can cease once sixty jurors have been qualified.

**B.** *Gregory Storey's Motion for the Early and/or Automatic Production of Jencks/Rule 26.2 Statements* (Doc. 103)

The defendant moves the court to direct the prosecution to provide him with all statements contemplated by 18 U.S.C. § 3500 or Fed.R.Crim.P. 26.2 [hereinafter *"Jencks* statements"] sixty days prior to trial. The defense moves in the alternative that the court order the automatic production of *Jencks* statements of all government witnesses after their direct examination without the necessity of the defense making repeated requests.

The United States asserts that because this case involves the alleged murder of one inmate by another, the potential for violence necessitates the protection of witnesses' statements and identities. The government wishes to wait until seven days before trial to disclose *Jencks* statements.

The *Jencks* Act, 18 U.S.C. § 3500, provides as follows:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified . . . .

Rule 26.2 contains the substance of 18 U.S.C. § 3500. Fed.R.Crim.P. 26.2 advisory committee notes.

■ The plain language of the *Jencks* Act prohibits a court from ordering disclosure of a government witness's prior statements before the witness testifies. *United States v. Nguyen,* 928 F.Supp. 1525 (D.Kan.1996); *see also United States v. Tager,* 481 F.2d 97, 100 (10th Cir.1973) (defendant has no right to pre-trial discovery of statements made by government witnesses). In *Nguyen,* another federal death penalty case, the government agreed to disclose the statements of witnesses for whose safety it was concerned immediately before trial, and the statements of all other witnesses ten days before trial. The court denied the defendant's motion for earlier production.

■ On the other hand, the defense must be afforded a reasonable opportunity to examine *Jencks* statements; if the government waits until after its witness has testified to disclose his prior statements, the court may be required to grant the defense a continuance. *United States v. Holmes,* 722 F.2d 37, 40–41 (4th Cir.1983).

The government represents that it possesses only a few documents which are discoverable under 18 U.S.C. § 3500. Disclosure of these statements seven days prior to trial should provide the defendant with adequate time to prepare his cross-examination. The defendant's motion for *Jencks* disclosure sixty days prior to trial is denied. The defendant's alternative motion for the automatic production of *Jencks* statements, without the necessity of repeated requests by the defendant, is granted.

### C. *Motion for Notice of Government's Intention to Use Residual Hearsay Exception Under Rule 803(24), With Suggestions* (Doc. 126)

Fed.R.Evid. 803(24), the "catch-all" hearsay exception, provides that:

[A] statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Mr. Storey moves the court to order the government to provide notice of its intent to offer any statement under Rule 803(24), including the name and address of the declarant, ninety days prior to trial. The government responds that at this time, it does not intend to introduce any statements under Rule 803(24), but that if it later decides to, it will provide the requisite notice pretrial. The government also asserts, however, that the defendant's request for ninety-day notice is excessive and not supported by any legal authority. The United States submits that an order requiring it to produce Rule 803(24) statements ninety days prior to trial could force it to disclose the addresses of potential witnesses, and thereby place them in risk of physical harm.

■ Because the government represents that it does not now have any statements which it intends to offer under Rule 803(24), the court will deny the defendant's motion. Should the government later determine that it does intend to offer a statement pursuant to Rule 803(24), the government is directed to immediately file notice of the existence of such a statement. The court will decide at that time when the government must disclose the particulars of the statement to the defendant.

### D. *Motion and Authority for Discovery on Sentencing Issues* (Doc. 128)

Under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the prosecutor has a duty to disclose, at least. upon request, all evidence favorable to the defendant which is "material either to guilt or punishment." In the sentencing phase of a death penalty prosecution, the defendant is entitled to present evidence regarding certain factors set forth in 18 U.S.C. § 3592(a). These factors include aspects of the defendant's background or character or any other circumstance of the offense that mitigates against imposition of the death sentence. 18 U.S.C. § 3592(a)(8). *Brady* there-

fore mandates discovery concerning such mitigating factors.

The defendant maintains that the government "should be required to disclose now anything known to the government arguably favorable to Mr. Storey on the issue of sentencing," including information relating to any factor listed in § 3592(a). The government responds that *Brady* only requires it to disclose material which is expressly and obviously exculpatory. *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir.1988). The United States represents that it has complied with *Brady*, and that the court should deny the defendant's motion as moot.

In his reply, the defendant expresses concern that the government reads *Brady* too narrowly. Mr. Storey argues that the United States Supreme Court's decision in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), mandates that "materiality" be viewed broadly. "Materiality" does not require that the defendant demonstrate "that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," but only that there would have been "a 'reasonable probability' of a different result." *Id.* at ——, 115 S.Ct. at 1566. The defendant argues that "the Government's supposed compliance with the rule of *Brady* is no reason to deny [Mr. Storey's] Motion," and that the court should grant the motion and direct the government to comply with *Brady* as interpreted in *Kyles*.

While the government does not cite *Kyles* in its brief, it is clear that the government understands the scope of its obligation to disclose information exculpatory to the defendant on the issue of sentencing. The government represents that it "has supplied everything known to it and in its possession that might be exculpatory to the defendant," and that it "has supplied the defendant with virtually every scrap of paper it has concerning the defendant's character and background, both exculpatory and non-exculpatory." The government goes on to acknowledge its duty "to provide the defendant with exculpatory material when it is discovered," and notes that "the awareness of potentially exculpatory evidence is partic-

ularly heightened" in this death penalty case.

■ The defendant concedes that "the prosecutor alone 'can know what is undisclosed.'" *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir.1995). The court is confident that the government understands its duty under *Brady*, and that it has disclosed the material requested by the defendant in his motion. The defendant's motion is therefore denied as moot.

**E.** ***Motion to Exclude Co–Conspirator Statements and/or to Restructure Procedures Regarding the Admissibility of Such Statements in the Context of a Death Penalty Case*** (Doc. 129)

The defendant seeks disclosure, ninety days prior to trial, of all statements which the government intends to offer pursuant to Fed.R.Evid. 801(d)(2)(E). Rule 801(d)(2)(E) provides that a statement by a defendant's co-conspirator made during the course and in furtherance of the conspiracy is not hearsay and is admissible. The defendant then asks the court to exclude all co-conspirator statements on the grounds that the admission of such statements would violate his rights against cruel and unusual punishment under the Eighth Amendment and his rights to confrontation, due process, equal protection, and a fair trial as guaranteed by the Fifth and Sixth Amendments. The defendant requests, as an alternative to the immediate exclusion of co-conspirator statements, that the court conduct a hearing regarding the admissibility of co-conspirator testimony prior to the commencement of trial.

Mr. Storey cites *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in support of his argument that evidence which may be permissible pursuant to Rule 801(d)(2)(E) may nevertheless fall short of the heightened degree of reliability required by the Fifth and Eighth Amendments when the prosecution seeks the death penalty. In *Woodson*, the Supreme Court concluded that North Carolina's murder statute making capital punishment mandatory for all first-degree murder convictions was unconstitution-

al. 428 U.S. at 305, 96 S.Ct. at 2991–92. The Court observed that there is an increased need for reliability in the determination that death is the appropriate punishment. *Id.* In *Beck,* the Supreme Court held that an Alabama court's failure to give a lesser included offense instruction in a capital murder case violated the Eighth Amendment. 447 U.S. at 638, 100 S.Ct. at 2390. The Court found that Alabama's practice diminished the reliability of the jury's determination of guilt. *Id.* The defendant argues that just as the state courts' practices in *Woodson* and *Beck* offended the reliability requirements inherent in the Eighth Amendment, so too would the use of co-conspirator statements in this case.

■ In *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court rejected the defendant's argument that co-conspirators' out-of-court statements are necessarily unreliable, and held that the admission of such statements does not violate the Confrontation Clause of the Sixth Amendment. *Id.* at 179, 181, 107 S.Ct. at 2780–81, 2781–82. The Court went on to state that "[e]ven if out-of-court declarations by co-conspirators are presumptively unreliable, trial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case." *Id.* at 180, 107 S.Ct. at 2781. Certainly, this court cannot grant the defendant's motion to exclude all co-conspirator statements without knowing the content and circumstances of those particular statements.

The defendant also requests that the court order the government to disclose co-conspirator statements ninety days prior to trial. The United States Court of Appeals for the Tenth Circuit has approved the use of a pretrial proceeding to determine the admissibility of Rule 801(d)(2)(E) statements. *United States v. Austin,* 786 F.2d 986, 990 (10th Cir.1986). The defendant cites no authority, however, which would require the government to provide ninety-day notice.

The government agrees to provide Rule 801(d)(2)(E) statements seven days prior to trial. It asserts that earlier disclosure would place its inmate witnesses in danger of retaliation. As the court noted in *United States v. Mills,* 641 F.2d 785, 790 (9th Cir.1981), "[t]he need to protect those who cooperate with the government is especially compelling ... where the witnesses are prison inmates who live in fear of retaliation for providing evidence against fellow inmates. Depriving them of that protection also jeopardizes the likelihood of future cooperation by prison inmates."

In addition, earlier disclosure may be forbidden by the *Jencks* Act, 18 U.S.C. § 3500(a), which provides that "no statement ... by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." If the co-conspirator statements in this case were made by government witnesses or prospective government witnesses, the *Jencks* Act prohibits the court from ordering their production before trial. *United States v. Bennett,* 158 F.R.D. 482, 484 (D.Kan.1994); *see also United States v. Percevault,* 490 F.2d 126, 132 (2d Cir.1974). Statements of prospective witnesses include statements by persons who were prospective witnesses when interviewed, but whom the government later decided not to call at trial. *Mills,* 641 F.2d at 790. Some courts have gone so far as to hold that the *Jencks* Act precludes the pretrial discovery of all co-conspirator statements, even when the co-conspirator is not a prospective witness. *See, e.g., United States v. Roberts,* 811 F.2d 257, 258–59 (4th Cir.1987). The Fourth Circuit held in *Roberts* that "the disclosure of co-conspirator statements may expose not only the declarant to threats and intimidation, but also those expected to testify at trial concerning the declarant's statements," and that such an approach "endangers government witnesses by circumventing the protections of the *Jencks* Act." *Id.* at 259.

■ Under the circumstances of this case, where the safety of inmate witnesses is a real concern, the court must deny the defendant's motion to order the government to disclose co-conspirator statements ninety days before trial. The court agrees with the defendant, however, that the preferred order of proof

942

for determining the admissibility of co-conspirator statements is to hold a pretrial hearing. *See United States v. James*, 590 F.2d 575, 582 (5th Cir.1979). The court shall hear arguments regarding the admissibility of coconspirator statements which the government intends to offer at trial on **May 16, 1997, at 9:00 a.m.**

**F. Motion to Dismiss Counts I and II of the Indictment for Failure to Properly Charge an Offense** (Doc. 130)

**G. Motion to Dismiss Counts on Grounds of Multiplicity, or, in the Alternative, to Compel Election of Counts** (Doc. 131)

The court held at the motions hearing on January 22, 1997, that these two motions have become moot as a result of the superseding indictment filed January 8, 1997.

**H. Defendant's Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives, and Cooperating Individuals and Motion for Disclosure of Exculpatory Evidence and Notice to the Government of Exculpatory Evidence Requested Concerning Government's Use of Informants, Operatives and Cooperating Individuals** (Doc. 132)

The defendant makes thirty-nine separate requests for disclosure, all of which he seeks ninety days before trial. At the motions hearing held January 22, 1997, the court directed the government to file a supplemental response to this motion, clarifying its position on the individual requests. The government filed its response on January 31, 1997. The court granted the defendant five days to reply to the supplemental response, but the defendant has not replied.

■ Much of the material which the defendant seeks in this motion is best characterized as impeachment information. Impeachment evidence clearly falls within the *Brady* rule. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Such evidence as it pertains to an informant, however, is only discoverable if the informant testifies. *See United States v.*

*Taft*, 769 F.Supp. 1295, 1313 (D.Vt.1991). The following requests of the defendant are denied, in that the defendant seeks impeachment material concerning non-witness informants, which is not discoverable, and/or because the government has already complied with the requests: 1–4, 6–7, 10, 23–24, 26–28, and 31. The defendant's remaining requests are discussed below.

**5. Names, addresses, and criminal records of witnesses**

The defendant seeks disclosure of this information ninety days prior to trial. The government agrees to supply the information seven days before trial. The government maintains that earlier disclosure would increase the risk of harm to its inmate witnesses.

■ 18 U.S.C. § 3432 provides that a person charged with a capital offense shall be furnished with the names and addresses of the government's witnesses at least three days before trial, unless the court finds by a preponderance of the evidence that providing a witness list would jeopardize the life or safety of any person. In addition, a witness's prior record is generally discoverable as *Brady* material. *United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir.1988).

■ While the information which the defendant seeks is therefore discoverable, the court must deny Mr. Storey's request for disclosure ninety days before trial. In *United States v. Rosales*, 680 F.2d 1304, 1305 (10th Cir.1981), the trial court denied the defendant's motion for pretrial disclosure of the identities of the government's inmate witnesses. The Tenth Circuit upheld the district court, finding that "[c]oncern for the safety of the witnesses was reasonable in view of their presence in a maximum security prison." *Id.* at 1305. This court has the same concern for the inmate witnesses in this case. *See also United States v. Nguyen*, 928 F.Supp. 1525, 1551 (D.Kan.1996) (capital murder case in which court denied defendant's motion for early disclosure of names of government witnesses).

8. **Agreements made with government informants, witnesses, or cooperating individuals relating to modification of their sentences**

The government must disclose promises of immunity or leniency made to its witnesses, *Giglio v. United States*, 405 U.S. 150, 155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), and the government agrees to do so seven days before trial. Promises of immunity or leniency made to non-testifying informants, however, are not discoverable. *Taft*, 769 F.Supp. at 1313. The court denies this portion of the defendant's motion.

9. **Information showing bias or prejudice of government witnesses**

The court directs the government to provide the requested information at least seven days before trial.

11. **Information showing defects in perception, etc. of informants or witnesses**

15. **Information on informants who abuse alcohol or drugs**

The government agrees to provide the requested information regarding its witnesses seven days before trial.

12. **Nature of past or present relationship between informant or cooperating individual and any federal or state agency**

13. **Date, time, and place any informant engaged by any federal or state agency**

■ For substantially the reasons set forth by the government, the court denies these requests as overbroad.

14. **Polygraph information on informants**

To the extent that this request seeks disclosure of polygraph information beyond that ordered under the defendant's Motion for Disclosure of Exculpatory, Favorable and Impeaching Evidence (Doc. 141) discussed below, the defendant's request is denied.

16. **Whether any informants have ever required psychiatric or psychological treatment**

■ The court denies this request as overbroad. The request also appears to seek information which would not be in the government's possession. *See United States v. Jackson*, 850 F.Supp. 1481, 1502 (D.Kan. 1994) (*Brady* only requires government to disclose exculpatory material in its possession); Fed.R.Crim.P. 16(a) (describing government's obligation to disclose evidence in its "possession, custody, or control").

17. **"All evidence" regarding informant witnesses to whom the government has made promises of leniency or immunity**

■ This request is denied as overbroad.

18. Number 18 is omitted from the defendant's motion.

19. **All materials with respect to informants contained in "main files" of federal and state agencies**

■ This request is denied for the reasons set forth in Request 16 above, and because the prosecution need not produce evidence held by a state agency. *United States v. Gatto*, 763 F.2d 1040, 1047–48 (9th Cir.1985).

20. **Information contained in FBI or BOP "subfiles" on informants**

■ This request is denied, in that the defendant has failed to provide the court with sufficient information to determine whether the requested material is discoverable.

21. **Copies of memoranda requesting payment to informants**

■ This request is denied as overbroad, and as possibly precluded from discovery by Fed.R.Crim.P. 16(a)(2) as memoranda made by the government in connection with this case. The defendant's concerns in this regard should be satisfied by the government's response to Requests 23 and 24.

**22. Copies of memoranda pertaining to privileges regarding conditions of witnesses' incarceration**

This request is denied as overbroad and as possibly precluded from discovery by Fed. R.Crim.P. 16(a)(2). The defendant's concerns in this regard should be satisfied by the government's response to Request 8.

**25. Whether any informant is expected to testify in this case, and any proposal to pay the informant**

The government responds that it has made no payments to informants in this case, and that it will disclose any testimony provided by informants seven days before trial.

**29. Federal tax returns of informants filed during pendency of this case**

The court denies this request as lacking in relevance and materiality. To the extent that the defendant anticipates that the requested returns would reveal financial inducements offered by the government, the defendant's concerns should be satisfied by the government's response to Requests 23, 24, 26, and 27.

**30. All receipts signed by witnesses or informants**

**33. Documentation setting forth accomplishments of informants**

The court denies these requests as overbroad.

**32. Whether any informant has previously been used as an informant or witness by any federal or state agency**

The court denies this request as overbroad, and because it seeks material in the possession of state agencies. *See Gatto*, 763 F.2d at 1047–48.

**34. Dates on which informants were "opened" or "closed"**

The court denies this request as precluded by Fed.R.Crim.P. 16(a)(2) as seeking discovery of reports, memoranda, or other internal government documents made in connection with this case.

**35. Whether any persons are currently opened as informants**

A simple "yes" or "no" answer to this question would not seem to implicate Rule 16(a)(2), and the government is directed to respond.

**36. Copies of instructions required to be given informants**

The court denies this request as overbroad, and as lacking in a showing of materiality pursuant to Fed.R.Crim.P. 16(a)(1)(C).

**37. Copies of instructions from informants' files**

The court denies this request for the reasons given for Request 36, and as possibly precluded by Rule 16(a)(2).

**38. Authorization for informant or confidential source to engage in activity that would constitute crime if engaged in by private person**

The court denies this request as precluded by Rule 16(a)(2).

**39. Pretrial services reports on informants or witnesses**

18 U.S.C. § 3153(c)(1) provides that "information obtained in the course of performing pretrial services functions ... shall be used only for the purposes of a bail determination and shall otherwise be confidential." Furthermore, the requested reports are not in the possession of the government, and are therefore precluded from discovery under Rule 16(a)(1)(C). The court denies this request.

**40. Presentence reports prepared on informants and witnesses**

Presentence reports on government witnesses are neither discoverable under *Brady*, in that the reports are not in the possession of the government, nor under the *Jencks* Act, in that they are not statements. *United States v. Dingle*, 546 F.2d 1378, 1380–

81 (10th Cir.1976); *see also* Fed.R.Crim.P. 32(b) (presentence investigation reports are prepared by the probation officer and submitted to the court). Nor does Fed. R.Crim.P. 16(a) mandate disclosure of presentence reports. *United States v. Sherlin,* 67 F.3d 1208, 1218 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996). The government acknowledges that certain information contained in the reports could be producible impeachment material under *Bagley,* and it agrees to disclose any such information. The court denies the defendant's request for the presentence reports themselves.

**I. *Gregory Storey's Motion and Memorandum of Law Regarding the Government's Obligation to Provide Notice Pursuant to Federal Rule of Evidence 404(b)* (Doc. 137)**

Fed.R.Evid. 404(b) provides that evidence of a defendant's other crimes, wrongs, or acts may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if the government provides reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce. The defendant filed a motion requesting the court to order the government to provide notice of "other crimes, wrongs, or acts" evidence it intends to introduce in its case-in-chief, as impeachment, or in rebuttal. The government responds that the only Rule 404(b) evidence it intends to offer is that relating to a June/July 1995 plan by Mr. Storey to kill another inmate, Ricky West.

The defendant replies that the government's notice is not reasonable in that it is not sufficiently particular to allow him to meet the evidence at trial or to argue for exclusion of such evidence. The defendant asks the United States to disclose the nature of the defendant's alleged plan, the names of the individuals involved in the plan, and the evidence upon which the government will rely to establish the existence of such a plan.

Guidance as to the disclosure requirement of Rule 404(b) is provided by the Notes of the Advisory Committee on Rules of Evidence, which are extremely helpful in interpreting the Federal Rules of Evidence. 10 James Wm. Moore, *Moore's Federal Practice* § 25[2] (2d ed.1996). The Committee rejected a requirement that Rule 404(b) notice satisfy the particularity requirements of language used in a charging instrument. Fed. R.Evid. 404(b) advisory committee's note on 1991 amendment. The Committee also stated that it did not intend that the rule require the prosecution to disclose the names of its witnesses. *Id.*

██ On the other hand, while the government need not provide precise details regarding the date, time, and place of the acts it intends to introduce, the government must provide sufficient information "to permit pretrial resolution of the issue of . . . admissibility." *United States v. Long,* 814 F.Supp. 72, 74 (D.Kan.1993). To the extent that the government has not complied with the notice requirement as set forth herein, it is ordered to do so within ten days of the date of this order.

**J. *Motion in Limine* (Doc. 138)**

Mr. Storey moves the court for an order prohibiting the government from introducing or mentioning evidence concerning (1) his alleged gang affiliation and (2) his prior convictions and the facts underlying those convictions. According to the defendant, the government has represented that it believes that Mr. Storey belongs to the prison gang called Aryan Brotherhood, and that the defendant killed Mr. Leger on behalf of the gang. The defendant submits that there is no evidence that he is a gang member or that Mr. Leger's death is related to a prison gang, but that if there is such evidence, the government should be ordered to produce it immediately so that the court may rule on its admissibility. The defendant also argues that he requires immediate disclosure of any "gang" evidence so that he can include questions regarding attitudes about gangs in his proposed jury questionnaire.

Evidence of the defendant's alleged gang affiliations may be admissible. *See, e.g., United States v. Silverstein,* 737 F.2d 864, 866 (10th Cir.1984) (holding that testimony concerning Aryan Brotherhood had probative

value regarding defendant's motive for murder and was properly admitted). The government maintains that its evidence will meet the requirements for admissibility. The United States objects, however, to immediately disclosing its evidence to the defendant. The government submits that immediate disclosure would risk harm to its witnesses, and wishes to wait until seven days before trial to produce discovery concerning Mr. Storey's gang affiliations.

The defendant offers no legal authority in support of his request for immediate disclosure of gang evidence, but maintains that he must obtain the government's evidence now so that he can draft appropriate jury questions. Even if the court were to order immediate disclosure, however, it is unlikely that the court would have ruled on the evidence's admissibility before the March 24, 1997, deadline for submission of the defendant's proposed questionnaire. On the other hand, the government's waiting until seven days before trial to disclose its evidence to the defendant would make it difficult for the parties to properly brief the issue of admissibility.

The court therefore directs the government to disclose all of its evidence pertaining to the defendant's gang affiliations by **April 28, 1997.** Motions in limine concerning the gang evidence will be due **May 5, 1997,** and responses will be due **May 12, 1997.** This order is subject to reconsideration if the government believes that disclosure of the specified evidence on April 28, 1997, would create an unacceptable risk of harm to any of its witnesses. In such a case, the government may file a motion for reconsideration, accompanied by an in camera submission of its proffered evidence, so that the court can evaluate the potential danger.

As for Mr. Storey's prior convictions, the government responds that none of the defendant's convictions are admissible under Fed. R.Evid. 404(b), and that it will therefore not offer such evidence in its case-in-chief. The government maintains that several of the defendant's convictions may be admissible under Fed.R.Evid. 609, however, if the defendant decides to testify.

The defendant's motion in limine regarding prior convictions is granted, to the extent that the government shall not introduce such evidence in its case-in-chief. If Mr. Storey decides to testify, the court will decide at that time whether the government may use the defendant's convictions for impeachment.

### K. *Motion for Extension of Time in Which to File Additional Pretrial Motions* (Doc. 140)

 Defense counsel submits that it may need to file additional motions on behalf of Mr. Storey, but that it has not had sufficient time to prepare those motions. The defense also anticipates that other motions may become necessary as preparation for trial continues. The defendant does not identify the nature of the motions which he intends to file.

In light of the supplemental motions deadlines which the court has already set in this case, the defendant's Motion for Extension of Time in Which to File Additional Pretrial Motions is denied. Should the defendant identify additional motions which must be filed, the court may consider such motions, for cause shown, pursuant to Fed.R.Crim.P. 12(f).

### L. *Motion for Disclosure of Exculpatory, Favorable and Impeaching Evidence* (Doc. 141)

As noted above, *Brady v. Maryland,* requires the government to disclose evidence favorable to the accused, where such evidence is material to either guilt or punishment. 373 U.S. at 87, 83 S.Ct. at 1196–97. The prosecutor's duty under *Brady* extends to the disclosure of evidence which might be used to impeach government witnesses. *Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380.

The defendant requests the immediate disclosure of all exculpatory and impeaching evidence. The United States wishes to wait until seven days before trial to disclose much of its *Brady* material, representing that once it reveals the identities of its witnesses and the substance of their testimony, the witnesses' lives will be in danger. The government states in support of its contention that the murder of which the defendant is accused

was the result of the victim being labeled a "snitch" by the inmate population. The defendant responds that disclosure seven days before trial will not provide him with adequate time to investigate the evidence.

■■■ The defendant has cited no authority, however, for ordering the government to disclose all Brady material immediately, and the court has located none. Rather, *"Brady* is not violated when the *Brady* material is available to defendants during trial." *United States v. Bishop,* 890 F.2d 212, 218 (10th Cir.1989) (quoting *United States v. Behrens,* 689 F.2d 154, 158 (10th Cir.1982)); *see also Nguyen,* 928 F.Supp. at 1549 n. 27 (*Brady* does not require pretrial disclosure of exculpatory evidence); *cf. United States v. McVeigh,* 954 F.Supp. 1441, 1451 (D.Colo. 1997) (*Brady* requires government to provide exculpatory information in time for the defense to make use of it).

In *Bishop,* the prosecution learned that the victim had identified someone other than the defendant in a photographic line-up, but failed to disclose this information to the defense. 890 F.2d at 218. The court of appeals held that because the defendant learned about the victim's earlier identification during its case-in-chief, no *Brady* violation had occurred. Where witness safety is a legitimate concern, courts have sanctioned the government's withholding of impeachment evidence until the day a witness testifies. *See, e.g., United States v. Higgs,* 713 F.2d 39, 44–45 (3d Cir.1983) (holding that district court abused its discretion in ordering disclosure a week prior to trial).

Bearing these principles in mind, we now turn to the defendant's fifteen specific requests for exculpatory and impeaching evidence.

### 1. Any and all *Brady* or impeachment information concerning government witnesses—inmate witnesses

Mr. Storey requests the immediate disclosure of this material, while the government wishes to wait until seven days before trial. The government maintains that the longer the period between disclosure and trial, the more difficult it will become to protect its inmate witnesses. According to the government, at least one of its witnesses has already asked for protection. The defendant replies that he has already identified at least three government witnesses, and that the prosecution therefore has no reason not to provide *Brady* material concerning these three witnesses.

For the reasons noted in the above discussion of *Brady* and its progeny, the court must deny the defendant's motion for immediate disclosure. However, the court strongly urges the government to disclose, at the earliest date possible, impeachment evidence regarding those witnesses whose identities have previously been revealed, to the extent that the disclosure of such evidence will not involve the disclosure of the identities of other witnesses who might thereby be placed in danger. The court wishes to provide the defendant with the opportunity to make effective use at trial of all *Brady* material now in the government's possession. If, after receiving the government's *Brady* material, the defendant is convinced that he cannot be ready for trial on May 19, 1997, he may request a continuance.

### 2. Any and all *Brady* or impeachment information concerning government witnesses—prison guards

■■■ The Bureau of Prisons (BOP) has informed the defendant that none of its personnel files on its guards contain *Brady* or impeaching material. Mr. Storey requests that an attorney who is familiar with the facts of this case review the files for *Brady* material. The government responds that the BOP's files have already been searched by Tim Roberts, an attorney who works as the legal advisor at the United States Penitentiary in Leavenworth.

This portion of the defendant's motion is denied as moot.

### 3. Polygraph evidence

The defendant asks the government, pursuant to Fed.R.Crim.P. 16(a)(1)(C), to disclose immediately evidence of polygraph examinations performed on government witnesses. The government responds that it will provide seven days in advance of tri-

al the results of a polygraph examination performed on inmate witness and co-conspirator George Pratt. The government submits that witness security concerns prevent earlier disclosure. The defendant does not reply to the government's argument.

Fed.R.Crim.P. 16(a)(1)(C) requires the government to permit the defendant to inspect and copy documents and tangible objects which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial. The court may specify the time of making the discovery and inspection. Fed. R.Crim.P. 16(d)(2). In general, the government's disclosure obligation is satisfied by making the requested documents available to the defendant prior to trial. *United States v. Gleason,* 616 F.2d 2, 25 (2d Cir.1979).

The defendant's motion for immediate production of polygraph evidence is denied. The government is directed, however, to comply with Rule 16(a)(1)(C), and to disclose the results of Mr. Pratt's polygraph examination at least seven days prior to trial.

### 4. Chain of custody documents

### 5. Chain of custody—DNA

The defendant asks the government to disclose immediately all chain of custody documents relating to physical evidence and DNA/blood samples. The government responds that it has already provided the defendant with all but one such document, that it expects to obtain this last document "any day," and that it will make it available to the defendant as soon as it receives it.

This portion of the defendant's motion is granted.

### 6. Evidence relating to search of prisoners' cells contemporaneous with the death of Mr. Leger

The defendant seeks the names of all individuals involved in the search of prison cells contemporaneous with the death of Mr. Leger. The government responds that no searches were performed. As ordered at the motions hearing, the government is directed to provide the defendant with a statement to that effect.

### 7. Results of searches of Mr. Storey's and Mr. Leger's cells in special housing unit

The government responds that no such documentation exists.

This portion of the defendant's motion is denied as moot.

### 8. Any report in which a witness attributed information as coming from Mr. Storey

The government responds that it has disclosed to the defendant all information in this regard, whether subject to Fed.R.Crim.P. 16(a)(1)(A) or *Brady.*

This portion of the defendant's motion is denied as moot.

### 9. Documents serving as basis for BOP's determination that Mark Nyquist and Robert Mayes are members of the Aryan Brotherhood

The government has provided the defendant with a 1994 BOP memorandum in which Mr. Storey was deemed to be associated with the Aryan Brotherhood gang because he ate meals with Mark Nyquist and Robert Mayes, "known" members of the Aryan Brotherhood. The defendant seeks the production of documents which form the basis for the BOP's determination that Mr. Nyquist and Mr. Mayes are members of the gang.

The government responds that it will provide the defendant with any documentary evidence it intends to offer concerning the association of Mr. Nyquist and Mr. Mayes with the Aryan Brotherhood. Fed.R.Crim.P. 16(a)(1)(C) requires, however, not only that the government produce documents which it intends to use at trial, but also documents which are material to the preparation of the defendant's defense.

This portion of the defendant's motion is granted.

### 10. All Leavenworth BOP files regarding the Aryan Brotherhood

The defendant submits that all such documents are material to the preparation of his defense. According to the defendant, these documents will establish that he is not a member of the Aryan Brotherhood by virtue of the fact that he is not named in them. The defendant also claims that these documents will demonstrate the "lackadaisical manner" in which the government investigates gang membership. The government responds that the defendant's request is overbroad, and that disclosure of all prison files on the Aryan Brotherhood would result in violence to the inmates who had provided information concerning the organization.

The information which the defendant requests may be considered "negative exculpatory" material, and therefore discoverable under *Brady,* if the defendant is not mentioned in the Aryan Brotherhood files. *See Jones v. Jago,* 575 F.2d 1164, 1168 (6th Cir. 1978) (statement of eyewitness to crime which makes no reference to the defendant's presence must be viewed as potentially powerful exculpation). If the files do mention the defendant, and the government intends to use the material in its case-in-chief, then the information would be discoverable under Fed.R.Crim.P. 16(a)(1)(C).

The court directs the government to disclose information from its Aryan Brotherhood files in accordance with the above-cited authorities. To the extent that the government is concerned about the safety of inmate informants, it may seek authorization from the court to delete specified items from the documents, to substitute a summary of the information found in the documents, or to substitute a statement admitting relevant facts that the information would tend to prove, e.g., that the defendant's name is not found in these files. Although the court certainly hopes it will not be necessary, unresolved disputes concerning this discovery may be brought to the court's attention by a motion for protective order under Fed. R.Crim.P. 16(d)(1), or by a motion to compel under Fed.R.Crim.P. 16(d)(2). *See McVeigh,* at 1449.

### 11. Copies of photographs referred to in BOP's December 1994 Aryan Brotherhood Suspects Memorandum

The defendant seeks disclosure of these photographs to demonstrate that he was not photographed with members of the Aryan Brotherhood. The government agrees to provide the defendant with all photographs it intends to use in its case-in-chief. The government also concedes that it has no photographs of the defendant. The court directs the government to provide the defendant with a statement to that effect.

### 12. Documents reflecting where inmates West, Pratt, Moorman, and Hale were housed at Leavenworth Penitentiary from January 1, 1995, until they were transferred from the facility

The government does not object to providing the cell assignments for the named individuals. This portion of the defendant's motion is granted.

### 13. All photographs taken during the investigation of Mr. Leger's death

The government responds that it has provided the defendant with over 160 photographs, which comprise all relevant photographs from the investigation. According to the government, it has disclosed all but six investigation photographs, and that these six photographs are duplicates and partially-developed photographs.

This portion of the defendant's motion is denied as moot.

### 14. Complete roster of Leavenworth's special housing unit from July 1, 1995, through September 30, 1995

The government has charged the defendant with conspiracy beginning on July 1, 1995. The defendant asserts that a roster for the requested time period would assist him in determining which inmates may have witnessed encounters between Mr. Storey and Mr. Leger, or between Mr. Storey and any inmate witnesses. The roster would also establish where the unindicted co-conspira-

**950**

tors were housed in relation to the government's witnesses.

The government responds that it has already provided the defendant with the roster for "the operative period of time," i.e., August 17, 1995, through August 25, 1995. Where the government charges a conspiracy beginning on July 1, 1995, however, it would seem that a roster for the entire period requested could be material to the preparation of the defendant's defense under Fed. R.Crim.P. 16(a)(1)(C).

This portion of the defendant's motion is granted.

### 15. Results of urinalysis performed on Mr. Storey on or about March 22, 1995

The government represents that it is in possession of a letter from the FBI stating that no such urinalysis was performed. The court directs the government to provide the defense with a copy of this letter.

### M. *Gregory Storey's Motion to Suppress Evidence Concerning or Derived From His Blood Samples* (Doc. 143)

On September 11, 1995, United States Magistrate Judge Ronald C. Newman issued a search warrant authorizing the collection of whole blood samples from the defendant. The warrant was issued upon the affidavit of FBI Special Agent Eric Gerstein, and was executed on September 13, 1995.

The defendant first claims that the results of the search should be suppressed because the affidavit contained assertions which were inaccurate and misleading, and which were made with either knowledge of their inaccurate and misleading character, or with reckless disregard concerning their inaccurate and misleading character. The defendant points to paragraph three of the affidavit, which states that "a murder took place." Mr. Storey claims that this statement represents an erroneous legal conclusion. The defendant also objects to the statement that

Mr. Leger "was attacked" by Mr. Storey—the defendant claims that Mr. Leger attacked him, and that he merely defended himself. Finally, the defendant argues that the assertion in the affidavit that "[t]wo correctional officers observed the attack" is untrue, in that the officers observed only the end of the fight between Mr. Leger and Mr. Storey. The defendant also claims that reckless disregard may be inferred from the fact that the affidavit did not inform Judge Newman that Mr. Storey had no wounds on him which could have contributed blood to the seized items of evidence.[1]

A defendant can attack the validity of a search warrant by alleging that the affidavit on which the warrant was issued contained false statements. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The defendant must satisfy a two-prong test in order to obtain an evidentiary hearing on the matter. *Id.* at 171, 98 S.Ct. at 2684. First, the defendant must allege deliberate falsehood or reckless disregard for the truth. *Id.* Second, the court must find that the challenged statements or omissions were necessary to a finding of probable cause. *Id.* at 171–72, 98 S.Ct. at 2684–85.

■ Applying this analysis to the affidavit in the instant case, we find that the defendant is not entitled to an evidentiary hearing. The statements of which Mr. Storey complains could hardly be characterized as "deliberate falsehoods" or statements made with "reckless disregard for the truth." While the statement that "a murder took place" may be a legal conclusion, it was not as the defendant claims "without any basis in fact set forth in the affidavit." The affidavit states that two correctional officers observed the defendant inflicting wounds on Mr. Leger, from which Mr. Leger later died. Special Agent Gerstein's assertions that Mr. Leger "was attacked" by Mr. Storey, and that "[t]wo correctional officers observed the attack," similarly have a basis in fact. The two officers may not have seen the beginning of

---

1. The government argues that the defendant did have a wound on his knee and a scab on his forearm, and that the defendant therefore demands that Special Agent Gerstein have inserted a misrepresentation in the affidavit. For the reasons discussed below, however, we need not decide whether Mr. Storey displayed any visible wounds in order to find that the search warrant in this case was valid.

the attack, but they observed Mr. Storey stabbing Mr. Leger, and they did not see Mr. Leger delivering any blows. *Franks* does not require that "every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165, 98 S.Ct. at 2681. It is sufficient if "the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

Even if the court were to find that the defendant had satisfied the first prong of the *Franks* test, however, he would still not be entitled to a hearing. If the court were to delete the alleged falsehoods from the affidavit, and insert the allegedly misleading omission, the warrant would nevertheless be valid under *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant is valid if, under the totality of the circumstances presented, the magistrate had a substantial basis for finding that there was a fair probability that evidence of a crime would be found in the place to be searched. *Id.* at 238, 103 S.Ct. at 2332. The facts in the affidavit presented the magistrate with a substantial basis for concluding that Mr. Storey's blood would contain evidence of a crime. Special Agent Thomas Callahan of the FBI Laboratory Division, DNA Examinations Section, advised that the laboratory would need whole blood samples from both the victim and the suspect in order to perform a thorough comparison of blood samples obtained from items of evidence. An agent's opinion that evidence will be found in the place to be searched is entitled to consideration in the determination of probable cause. *United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.1993). Furthermore, two correctional officers observed Mr. Storey stabbing Mr. Leger, but they did not observe Mr. Leger attack Mr. Storey. Under these circumstances, the magistrate had probable cause to believe that an analysis of Mr. Storey's blood would reveal that no significant quantity of the defendant's blood was present at the crime scene. The lack of Mr. Storey's blood would tend to negate the defendant's claim of self-defense, and thereby constitute evidence of murder.

The defendant next argues that the issuance and execution of the search warrant were unreasonable under the Fourth Amendment, because the warrant did not provide that his blood be drawn by a qualified person in accordance with accepted medical procedures. The defendant cites *Winston v. Lee,* 470 U.S. 753, 767, 105 S.Ct. 1611, 1620, 84 L.Ed.2d 662 (1985), in which the Supreme Court held that a proposed surgical procedure to remove a bullet from under a defendant's collarbone would constitute an unreasonable search under the Fourth Amendment. The *Winston* Court balanced three factors, drawn from *Schmerber v. California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966), in reaching its decision: (1) the extent to which the procedure would threaten the safety or health of the individual; (2) the extent of intrusion upon the individual's dignitary interest in personal privacy and bodily integrity; and (3) the community's interest in fairly and accurately determining guilt and innocence.

The court finds the instant situation more analogous to *Schmerber,* which involved the taking of a blood sample, than to *Winston,* which involved invasive surgery. In *Schmerber,* the Court concluded that the police were justified under the Fourth Amendment in requiring the defendant to submit to a blood test. *Id.* at 772, 86 S.Ct. at 1836–37. Mr. Schmerber's blood was drawn by a physician according to accepted medical practices. *Id.* at 771, 86 S.Ct. at 1836. Similarly, the government represents that Mr. Storey's blood was drawn by a physician's assistant in a medically reasonable manner. Despite the defendant's assertion to the contrary, *Schmerber* does not require that the search warrant specifically state that the blood sample be drawn in accordance with accepted medical procedures. In *Schmerber,* the defendant's blood was seized without any warrant at all. *Id.; see also United States v. Bullock,* 71 F.3d 171, 176–77 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1365, 134 L.Ed.2d 531 (1996) (drawing of defen-

dant's blood by registered nurse satisfied *Schmerber*).

Lastly, the defendant objects that the search warrant was obtained and executed *ex parte*, without an opportunity for him to assert his privacy interest regarding the intrusion into his body or to insure that any such intrusion would be conducted in a safe manner. The defendant cites no authority, however, for the proposition that search warrants for the seizure of blood samples cannot be issued *ex parte*.

The defendant's motion is denied.

**IT IS THEREFORE BY THE COURT ORDERED** that Gregory Storey's Motion Concerning Voir Dire Procedures (Doc. 102) is granted in part and denied in part, as set forth above.

**IT IS FURTHER ORDERED** that Gregory Storey's Motion for the Early and/or Automatic Production of Jencks/Rule 26.2 Statements (Doc. 103) is granted in part and denied in part; the defendant's motion for automatic production is granted, but his motion for early production is denied.

**IT IS FURTHER ORDERED** that the defendant's Motion for Notice of Government's Intention to Use Residual Hearsay Exception Under Rule 803(24), With Suggestions (Doc. 126) is denied, subject to the court's direction to the government as set forth above.

**IT IS FURTHER ORDERED** that the defendant's Motion and Authority for Discovery on Sentencing Issues (Doc. 128) is denied as moot.

**IT IS FURTHER ORDERED** that the defendant's Motion to Exclude Co–Conspirator Statements and/or to Restructure Procedures Regarding the Admissibility of Such Statements in the Context of a Death Penalty Case (Doc. 129) is granted in part and denied in part; the defendant's motion for disclosure of co-conspirator statements ninety days before trial, and for the exclusion of all such statements, is denied, but his motion for a hearing on the admissibility of co-conspirator testimony prior to trial is granted.

**IT IS FURTHER ORDERED** that defendant's Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives, and Cooperating Individuals and Motion for Disclosure of Exculpatory Evidence and Notice to the Government of Exculpatory Evidence Requested Concerning Government's Use of Informants, Operatives and Cooperating Individuals (Doc. 132) is granted in part and denied in part as set forth above.

**IT IS FURTHER ORDERED** that Gregory Storey's Motion and Memorandum of Law Regarding the Government's Obligation to Provide Notice Pursuant to Federal Rule of Evidence 404(b) (Doc. 137) is granted as set forth above. The government shall provide, within ten days of the date of this order, sufficient information concerning the nature of the evidence it intends to introduce pursuant to Rule 404(b) to permit the defendant to prepare a motion in limine to contest its admissibility.

**IT IS FURTHER ORDERED** that the defendant's Motion in Limine (Doc. 138) is granted in part and denied in part, as set forth above.

**IT IS FURTHER ORDERED** that the defendant's Motion for Extension of Time in Which to File Additional Pretrial Motions (Doc. 140) is denied as set forth above.

**IT IS FURTHER ORDERED** that the defendant's Motion for Disclosure of Exculpatory, Favorable and Impeaching Evidence (Doc. 141) is granted in part and denied in part, as set forth above.

**IT IS FURTHER ORDERED** that Gregory Storey's Motion to Suppress Evidence Concerning or Derived From His Blood Samples (Doc. 143) is denied.